**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:04CV171-H**

| | |
|---|---|
| **KENNETH BARTON and SHARON BARTON,** ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | **MEMORANDUM AND ORDER** |
| **VICKI INGLEDUE, M.D., MARK SCOTT, P.A., and ASHE MEMORIAL HOSPITAL,** ) ) ) ) | |
| Defendants. ) ) | |

**THIS MATTER** is before the Court on "Defendants Mark Scott, P.A. and Ashe Memorial Hospital's Motion for Summary Judgment" (document #25) and "Brief in Support ..." (document #26), both filed June 3, 2005; and the Plaintiffs' "Response ... " (document #27) filed June 21, 2005. The moving Defendants have not filed a reply brief in support of their motion and the time for filing a reply has expired.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> "Defendants Mark Scott, P.A. and Ashe Memorial Hospital's Motion for Summary Judgment," as discussed below.

# I. FACTUAL AND PROCEDURAL BACKGROUND

This is a medical malpractice action filed in federal court pursuant to diversity subject matter jurisdiction. The Defendant Ashe Memorial Hospital ("the Hospital") is organized under the laws of North Carolina and located in Jefferson, Ashe County, North Carolina. Defendant Mark Scott, a North Carolina citizen, is a Physician's Assistant ("P.A.") employed by the Hospital. Defendant Vicki Ingledue, M.D., also a North Carolina citizen, is a board-certified family practice physician, who at the times relevant to the Complaint, practiced at the Hospital and served, on a rotational basis with the Hospital's other physicians, as the "on call" doctor for the Hospital's emergency room.

The Plaintiffs, Kenneth Barton and his wife, Sharon Barton, are citizens of Catasauqua, Pennsylvania. Sometime on June 24, 2001, the Plaintiffs, who apparently were in the area on vacation, went to the Hospital's emergency room for treatment of a cut on the back of Mr. Barton's lower leg that he had sustained in a fall while hiking. Although the parties have not submitted Mr. Barton's medical records, based on the narration of Mr. Scott's treatment note that is contained in the opinion of Dr. Ronald F. Sing, the Plaintiffs' expert, discussed below, the wound was "very complex ... [and] involved multiple layers into the fat, fascia, and muscle as well as being grossly contaminated." Exhibit F to Defendant Ingledue's "Motion to Dismiss" (document #20).[1]

It is undisputed that at the time Mr. Barton went to the Hospital, Dr. Ingledue was the on call doctor for the emergency room, although she was at her home during the time that Mr. Barton received treatment, and that Mr. Scott, who was under her supervision, treated Mr. Barton.

---

[1] As discussed below, on May 13, 2005, Dr. Ingledue filed her Motion to Dismiss which raised, among other things, the single issue raised in Mr. Scott and the Hospital's June 3, 2005 Motion for Summary Judgment, that is, whether the Plaintiffs' claims are barred by the three-year statute of limitations because they were improperly granted a 120-day extension of that deadline. However, due to an error in the clerk's office, Mr. Scott's and the Hospital's motion was neither docketed nor transmitted to the undersigned's chambers until June 21, 2005, one week after the court denied Dr. Ingledue's motion. See "Memorandum and Order" entered June 14, 2005 (document #24).

According to Dr. Sing's recitation of the care provided, which the Defendants have not disputed at this point of the proceedings, Mr. Scott administered a local anesthetic, cleaned the wound, that is, he performed a "local syringe irrigation" and "removed multiple foreign bodies," sutured the wound, applied a dressing, and gave the Plaintiff a prescription for Keflex, an antibiotic, with instructions to begin taking the medicine "if signs of infection ar[o]se." Id.

Sometime later, Dr. Ingledue reviewed and "signed off" on Mr. Scott's treatment note. In her affidavit, Dr. Ingledue stated that she signed the treatment note "pursuant to the [H]ospital procedure for post-visit physician oversight of medical care provided by physician's assistants." Exhibit A to Defendant Ingledue's "Motion to Dismiss" (document #20).

The Plaintiffs allege that during the next week and as a proximate result of the Defendants' failure to provide proper medical care, Mr. Barton developed a "tremendous infection, leading to the necessity of skin grafts and substantial loss of muscle in the area of the wound from a necrotic process." Id. The Plaintiffs also allege that when Mrs. Barton contacted the Hospital telephonically and described the onset of the infection, Hospital staff instructed her that Mr. Barton would not be seen until he experienced fever exceeding 102 degrees.

The Plaintiffs subsequently returned to their home in Pennsylvania, where Mr. Barton was treated at Leigh County Hospital.

On October 30, 2001, Mr. Sacchetta wrote the Defendant Hospital and requested a copy of the Plaintiff's medical chart, which sometime thereafter he received.

On March 1, 2003, Mr. Sacchetta first contacted Dr. Sing, who is a board-certified general surgeon presently specializing in trauma and critical care at Carolinas Medical Center, Charlotte, North Carolina, to seek his opinion of the care provided by the Defendants to Mr. Barton.

3

The Plaintiffs do not dispute that their state law claims were subject to N.C. Gen. Stat. § 1-15(c) which prescribes a three-year statute of limitations in medical negligence actions. On June 23, 2004, one day prior to the expiration of the limitations period, the Plaintiffs, through their then-local counsel, Gregory J. Brewer of Wilkesboro, North Carolina, filed a "Motion to Extend Statute of Limitations N.C. R. Civ. P. 9(j)" in Ashe County Superior Court. In the motion, Mr. Brewer stated that he had been recently retained, a fact that the Defendants do not dispute, and that he desired an extension in order "to comply with Rule 9" and to have time to obtain "all medical records from all medical providers, forward them to [Dr. Sing] for additional review and receive a response." Exhibit 3 to Defendants Scott's and Hospital's "Brief in Support ..." (document #26). In their Response, the Plaintiffs credibly represent that at that time, they had not yet received Mr. Barton's complete medical chart from Leigh County Hospital.

Based on this showing, Superior Court Judge Michael E. Helms concluded that "good cause exist[ed] for granting the [Plaintiffs'] motion and that the ends of justice w[ould] be served by an extension" and extended the statute of limitations to October 22, 2004. Id.

On October 22, 2004, the Plaintiffs filed their Complaint, alleging negligence claims against each of the Defendants, as well as claims against the Hospital under theories of vicarious liability, agency, and "corporate liability," along with Mrs. Barton's claim for loss of consortium. In their Complaint, the Plaintiffs also stated, as they were required to do pursuant to N.C. R. Civ. P. 9(j), that "the medical care of the Defendants has been reviewed by a person reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care." Document #1 at 15.

On January 15, 2005, Dr. Ingledue served "Interrogatories to the Plaintiff[s] ... Pursuant to Rule 9(j)," that is, preliminary interrogatories concerning Dr. Sing's opinion generally.[2]

In response to Dr. Ingledue's Rule 9(j) Interrogatories, Dr. Sing identified numerous alleged violations of the standard of care, including "a physician extender ... manag[ing] this [type of] wound without physician input"; cleaning the wound only through local irrigation, as opposed to placing the patient under general anesthesia and conducting a manual search for or taking an X-Ray of the wound area in order to locate any additional "foreign bodies" in the wound; immediately closing the wound, as opposed to leaving the wound open for "more irrigations over several days"; failing to install a drain in the wound once it had been closed; failure to give Mr. Barton a tetanus booster shot; failure to instruct Mr. Barton to begin taking antibiotics immediately; placing the burden of identifying infection on the patient, particularly in a wound on the back of the leg that is difficult to see; and failure to instruct Mr. Barton to follow up with a doctor within 48-72 hours of discharge from the emergency room. See Exhibit F to Defendant Ingledue's "Motion to Dismiss" (document #20).

On May 13, 2005, Defendant Ingledue filed her Motion to Dismiss, contending, among other things, that Judge Helms improperly extended the statute of limitations, and that, therefore, the Complaint should be dismissed as untimely filed.

On May 21, 2005, the undersigned <u>denied</u> Dr. Ingledue's motion, concluding concerning the statute of limitations issue that:

---

[2]There is no indication in the record that Mr. Scott or the Hospital served any Rule 9(j) Interrogatories.

5

> [T]he record is clear that the Plaintiffs stated that they were seeking an extension in order to comply with Rule 9(j), a certification that has been held to be sufficient [to justify extending the statute of limitations] without further elaboration.

"Memorandum and Order" at 11 (document #24) (internal citation and quotations omitted).

The Defendants' Motion for Summary Judgment has been fully briefed as set forth above and is now ripe for disposition.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See also Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

In North Carolina, prior to filing a civil action for medical malpractice, the plaintiff is required to have the medical care reviewed by a medical expert pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure. See Frazier v. Angel Med. Ctr., 308 F. Supp.2d 671, 676 (W.D.N.C. 2004) (N.C. R. Civ. P. 9(j) is substantive element of state law claim for medical malpractice even when brought in federal court).

Rule 9(j) also provides that:

> [u]pon motion by the complainant prior to the expiration of the applicable statute of limitations, a resident judge of the superior court ... may allow a motion to extend the statute of limitations for a period not to exceed 120 days to file a complaint in a medical malpractice action in order to comply with this Rule, upon a determination that good cause exists for the granting of the motion and that the ends of justice would be served by an extension.

A review of North Carolina precedent reveals that the standard for establishing good cause for a Rule 9(j) extension is not onerous. Accord Thigpen v. Ngo, 355 N.C. 198, 199, 558 S.E.2d 162, 163-64 (2002) (extension properly granted where plaintiff stated in her motion only that she "need[ed] additional time to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure"); and Stewart v. Southeastern Regional Medical Center, 142 N.C.App. 456, 458, 543 S.E.2d 517, 518 (2001) (extension of statute of limitations valid as to every defendant in subsequently-filed lawsuit, even those not named in plaintiff's petition for extension).

Applying these legal principles, the Plaintiffs timely applied for and received an extension of the three-year statute of limitations, and prior to the expiration of the extended deadline, filed their Complaint which included the requisite Rule 9(j) certification concerning a medical expert.

Although the Defendants allege that the extension was improvidently given, that is, that the Plaintiffs were not entitled to an extension in order to obtain medical records from Leigh County Hospital and submit them to Dr. Sing for "an additional review," the record is clear that the Plaintiffs stated that they were seeking an extension "in order to comply with" Rule 9(j), a certification that, as discussed above, has been held to be sufficient without further elaboration. Thigpen, 355 N.C. at 199, 558 S.E.2d at 163-64.

Although they were permitted to submit preliminary Interrogatories pursuant to Rule 9(j), the Defendants did not elect to probe Dr. Sing's rationale for reviewing the entire medical record prior to rendering his formal opinion. Moreover, even if Dr. Sing could have given an opinion concerning the medical care at issue herein after reviewing only Mr. Barton's records from the Defendant Hospital, the Defendants have not cited, and the undersigned is unaware of, any authority requiring him to limit his review to those records. To the contrary, obtaining an expert's review of the entire medical record prior to filing suit certainly is within the spirit of Rule 9(j), that is, taking extra pains to fully develop the basis for medical malpractice actions prior to filing suit.

Accordingly, because the Plaintiffs timely filed a medical malpractice Complaint that contained a proper expert certification, the Defendants' Motion for Summary Judgment must be denied.

## III. ORDER

**NOW THEREFORE, IT IS ORDERED:**

1. "Defendants Mark Scott, P.A. and Ashe Memorial Hospital's Motion for Summary Judgment" (document #25) is **DENIED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED**.

**Signed: July 14, 2005**

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge