# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:04CV171-H

| | |
|---|---|
| KENNETH BARTON and SHARON BARTON, ) ) ) Plaintiffs, ) ) vs. ) ) VICKI INGLEDUE, M.D., MARK ) SCOTT, P.A., and ASHE MEMORIAL ) HOSPITAL, ) ) Defendants. ) ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the following motions and memoranda:

1. Defendant Vicki Ingledue, M.D.'s "First Motion for Sanctions and Memorandum ..." (document #36) filed October 25, 2005, "Motion to Dismiss and Memorandum ..." (document #38) filed November 16, 2005, and "Supplement to Motion to Dismiss" (document #39) filed November 18, 2005;

2. The Plaintiffs' "Response to Motion to Dismiss" (document #40) and "Response to Motion for Sanctions" (document #42), both filed December 5, 2005; and

3. Defendant's "Reply to Response to Motion to Dismiss" (document #41) filed December 6, 2005.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant in part</u> and <u>deny in part</u> Defendant Ingledue's First Motion for Sanctions

but deny her Motion to Dismiss, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a medical malpractice action filed in federal court pursuant to diversity subject matter jurisdiction. The Defendant Ashe Memorial Hospital ("the Hospital") is organized under the laws of North Carolina and located in Jefferson, Ashe County, North Carolina. Defendant Mark Scott, a North Carolina citizen, is a Physician's Assistant ("P.A.") employed by the Hospital. Defendant Vicki Ingledue, M.D., also a North Carolina citizen, is a board-certified family practice physician, who at the times relevant to the Complaint, practiced at the Hospital and served, on a rotational basis with the Hospital's other physicians, as the "on call" doctor for the Hospital's emergency room.

The Plaintiffs, Kenneth Barton and his wife, Sharon Barton, are citizens of Catasauqua, Pennsylvania. Sometime on June 24, 2001, the Plaintiffs, who apparently were in the area on vacation, went to the Hospital's emergency room for treatment of a cut on the back of Mr. Barton's lower leg that he had sustained in a fall while hiking. Based on the narration of Mr. Scott's treatment note by Dr. Ronald F. Sing, the Plaintiffs' expert, the wound was "very complex ... [and] involved multiple layers into the fat, fascia, and muscle as well as being grossly contaminated." Response to Rule 9(j) Interrogatories, Exhibit F to Defendant's first "Motion to Dismiss" (document #20).

It is undisputed that at the time Mr. Barton went to the Hospital, Dr. Ingledue was the on call doctor for the emergency room, although she was at her home during the time that Mr. Barton received treatment, and that Mr. Scott, who was under her supervision, treated Mr. Barton.

According to Dr. Sing's recitation of the care provided, which the Defendants have not disputed at this point of the proceedings, Mr. Scott administered a local anesthetic, cleaned the

2

wound, that is, he performed a "local syringe irrigation" and "removed multiple foreign bodies," sutured the wound, applied a dressing, and gave the Plaintiff a prescription for Keflex, an antibiotic, with instructions to begin taking the medicine "if signs of infection ar[o]se." Id.

Sometime later, Dr. Ingledue reviewed and "signed off" on Mr. Scott's treatment note. In her affidavit, Dr. Ingledue states that she signed the treatment note "pursuant to the [H]ospital procedure for post-visit physician oversight of medical care provided by physician's assistants." Exhibit A to Defendant's first "Motion to Dismiss" (document #20).

The Plaintiffs allege that during the next week and as a proximate result of the Defendants' failure to provide proper medical care, Mr. Barton developed a "tremendous infection, leading to the necessity of skin grafts and substantial loss of muscle in the area of the wound from a necrotic process." Id. The Plaintiffs also allege that when Mrs. Barton contacted the Hospital telephonically and described the onset of the infection, Hospital staff instructed her that Mr. Barton would not be seen until he experienced fever exceeding 102 degrees.

The Plaintiffs subsequently returned to their home in Pennsylvania, where Mr. Barton was treated at Leigh County Hospital.

On October 22, 2004, the Plaintiffs filed their Complaint, alleging negligence claims against each of the Defendants, as well as claims against the Hospital under theories of vicarious liability, agency, and "corporate liability," along with Mrs. Barton's claim for loss of consortium. In their Complaint, the Plaintiffs also stated, as they were required to do pursuant N.C. R. Civ. P. 9(j), that "the medical care of the Defendants has been reviewed by a person reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care." Document #1 at

3

15.     Specifically, Dr. Sing identified numerous alleged violations of the standard of care by Dr. Ingledue, including "a physician extender ... manag[ing] this [type of] wound without physician input"; cleaning the wound only through local irrigation, as opposed to placing the patient under general anesthesia and conducting a manual search for or taking an X-Ray of the wound area in order to locate any additional "foreign bodies" in the wound; immediately closing the wound, as opposed to leaving the wound open for "more irrigations over several days"; failing to install a drain in the wound once it had been closed; failure to give Mr. Barton a tetanus booster shot; failure to instruct Mr. Barton to begin taking antibiotics immediately; placing the burden of identifying infection on the patient, particularly in a wound on the back of the leg that is difficult to see; and failure to instruct Mr. Barton to follow up with a doctor within 48-72 hours of discharge from the emergency room.

On March 18, 2005, the undersigned entered a "Pretrial Order and Case Management Plan," setting the dates for production of the Plaintiffs' and Defendants' expert reports to October 28 and November 28, 2005, and the respective discovery and dispositive motions deadlines for January 1 and 30, 2006.  See document #17.

On April 14, 2005, Defendant Ingledue served her "First Set of Interrogatories ... [and] Request for Production of Documents ... to the Plaintiff, Kenneth Barton" and her "First Set of Interrogatories ... [and] Request for Production of Documents ... to the Plaintiff, Sharon Barton."

On May 13, 2005, Defendant Ingledue filed her first Motion to Dismiss, contending, among other things, that the Complaint was untimely and that Plaintiffs failed to comply with N.C. R. Civ. P. 9(j) in that Dr. Sing would not qualify as an expert concerning the care provided by either a family practitioner or an emergency room physician; and that even should he qualify as an expert regarding

Dr. Ingledue, Dr. Sing never opined that he believed that Dr. Ingledue violated an applicable standard of care.

On June 14, 2005, the undersigned <u>denied</u> the Defendant's first Motion to Dismiss. <u>See</u> "Memorandum and Order" at 13 (document #24) ("the Plaintiffs timely filed a medical malpractice Complaint that contained a proper expert certification").

On June 29, 2005, Dr. Ingledue served a "Second Set of Interrogatories of Defendant, Vicki Ingledue, M.D., to the Plaintiffs, Kenneth Barton and Sharon Barton, Pursuant to Rule 9(j)."

On July 1, 2005, and after defense counsel made repeated attempts to obtain responses to the Defendant's <u>initial</u> discovery requests without involving the Court, Defendant Ingledue filed her first "Motion to Compel" (document #28).

On September 2, 2005, and after the Plaintiffs' failed to produce the discovery responses or to respond to the Motion to Compel, the undersigned <u>granted</u> the Defendant's motion and <u>ordered</u> the Plaintiff's to produce responses to the Defendant's First Sets of Interrogatories and Requests for Production of Documents on or before September 16, 2005. <u>See</u> "Memorandum and Order" (document #34). As discussed below, however, the Plaintiffs did not serve any responses to these discovery requests until November 18, 2005.

On September 23, 2005, after the Plaintiffs also failed to produce responses to the Defendant's "Second Set of Interrogatories of Defendant, Vicki Ingledue, M.D., to the Plaintiffs, Kenneth Barton and Sharon Barton, Pursuant to Rule 9(j)" or to respond to defense counsel repeated attempts to resolve that matter informally, the Defendant filed her second "Motion to Compel" concerning those discovery requests.

On September 27, 2005, the Defendant deposed each of the Plaintiffs.

On October 25, 2005, Dr. Ingledue filed her "First Motion for Sanctions," seeking dismissal of the Complaint as to herself and an award of the attorneys' fees and costs that she has incurred relative to the Plaintiffs' refusal to produce responses to her first set of discovery requests.

On October 26, 2005, and after the Plaintiffs failed to respond in any fashion to the Defendant's second Motion to Compel, the undersigned <u>granted</u> that Motion and <u>ordered</u> the Plaintiff's to respond to the "Second Set of Interrogatories ... Pursuant to Rule 9(j)" on or before November 9, 2005. <u>See</u> "Memorandum and Order" (document #37).

On November 16, 2005, and having received no responses to any of the discovery requests discussed above, Dr. Ingledue filed her second Motion to Dismiss the Complaint as a sanction for the Plaintiffs' failure to comply with either of the Court's Orders compelling discovery and because the Plaintiffs had failed to serve Dr. Sing's expert report on or before October 28, 2005.

In their Responses to the pending Motions, discussed below, the Plaintiffs contend that they served their responses to the Defendant's First Set of Interrogatories and Request for Production of Documents and Second Set of Interrogatories of Pursuant to Rule 9(j) on November 18, 2005.

The same day, the Defendant filed her Supplement to her Motion to Dismiss, noting that her counsel had received the Plaintiffs' responses to her Second Set of Rule 9(j) Interrogatories, but contending without further explanation that those responses were "vague."

On November 23, 2005, during a deposition in this case, Dr. Ingledue's counsel informed Plaintiffs' counsel, Thomas F. Sacchetta, that no responses to the Defendant's First Set of Interrogatories and Request for Production of Documents had yet been received. Accordingly, Mr. Sacchetta promptly served a second set of those responses via overnight mail.

On December 5, 2005, the Plaintiffs filed their Responses to the Defendant's Motion for

Sanctions and Motion to Dismiss. In their Response to Dr. Ingledue's Motion to Dismiss, Plaintiffs' counsel states that he had "diligently" attempted both to produce discovery responses in a timely manner and to comply with the Court's previous Orders, but that "due to unforeseen circumstances with regard to the [P]laintiffs', [he] ha[d] only recently been able to gather all of the required information." Document #40 at 3-4. Mr. Sacchetta also states that he believes that Dr. Sing's expert report was served prior to October 28, 2005, and that a copy was also attached to the Plaintiffs' discovery responses that were served three weeks later.

In her Reply, the Defendant concedes that her counsel received both sets of discovery responses, that is, those served on November 18 and 23, 2005, but states that Dr. Sing's report was attached only to the later set of documents. The Defendant also contends that the Plaintiffs' responses to her First Set of Interrogatories and Request for Production of Documents were deficient in several ways, that is, the Plaintiffs have belatedly interposed objections to some of the requests on grounds of over breadth, and other responses merely refer the Defendant to "see [P]laintiffs' complaint" or otherwise fail to respond fully to the requests. See document #41 at 1.

The Defendant's Motions have been fully briefed as set forth above and are now ripe for disposition.

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need

7

not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

Whether to grant or deny a motion to compel discovery is generally left within the district court's broad discretion. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

Although a party responding to discovery may raise an objection to a discovery request, the objection is waived if it is not made at the time that the responding party's initial responses are due. Accord Drexel Heritage Furnishings, Inc., v. Furniture USA, Inc., 200 F.R.D. 255, 258 (M.D.N.C. 2001) (waiver applies even to objection that subject information is otherwise privileged confidential trade secret); and Jayne H. Lee, Inc., v. Flagstaff Industries Corp., 173 F.R.D. 651, 657 n. 16 (D. Md. 1997). Moreover, assuming the Plaintiffs had raised timely their objections as to undue breadth or burden, as the Court has concluded previously, the Defendant is entitled to complete responses to its discovery requests because they are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P.(b)(1).

Concerning attorneys' fees and costs that a party incurs while prosecuting a motion to compel

8

or otherwise as the result of the opposing party's failure to make discovery, Fed. R. Civ. P. 37(a)(4)(A) provides:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2) governs the additional sanctions that may be imposed for failure to comply with a discovery order, stating in relevant part:

> If a party … fails to obey an order to provide or permit discovery … the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following… (C) An order … dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

However, the Fourth Circuit has emphasized the significance of both establishing a history of dilatory action <u>and</u> warning the offending party of what may follow prior to dismissing any of that party's claims and/or entering a default judgment. See, e.g., <u>Hathcock v. Navistar Int'l Transp. Corp.</u>, 55 F.3d 36, 40 (4th Cir. 1995); <u>Choice Hotels Int'l v. Goodwin & Boone</u>, 11 F.3d 469, 473 (4th Cir. 1993); <u>and</u> <u>Lolatchy v. Arthur Murray, Inc.</u>, 816 F.2d 951, 953 (4th Cir. 1987).

Applying these legal principles to this case, it is clear that Dr. Ingledue is entitled to complete responses to all of her discovery requests. Accordingly, the Plaintiffs' belated objections are <u>overruled</u> and the undersigned will <u>order</u> the Plaintiffs to serve complete responses to both the Defendant's First Sets of Interrogatories and Requests for Production of Documents and her Second Set of Interrogatories Pursuant to Rule 9(j). Moreover, because the Defendant is obviously entitled

to have the benefit of those responses prior to serving her expert report(s) or to deposing Dr. Sing, the Defendant's deadline for serving her expert reports and the discovery deadline will be extended. Moreover, should the Plaintiffs' responses raise any issues which the Defendant concludes were not addressed in the Plaintiffs' deposition, she is <u>granted leave</u> to reconvene the deposition of either or both of the Plaintiffs.

Moreover, the Plaintiffs having failed to show justification – substantial or otherwise – why they failed to timely respond to the subject discovery requests, and particularly in light of the Defendant's patience in attempting to resolve this matter informally, the Defendant is also entitled to recover her reasonable attorney's fees and expenses incurred in connection with the two Motions to Compel, the Motion for Sanctions, and the Motion to Dismiss.

Because the Plaintiffs have not been warned previously of the dire consequences facing them and their lawsuit if they continue to fail to comply with the Court's Orders or to otherwise cooperate fully in the discovery process, the Complaint will not be dismissed at this point in the proceedings. The undersigned specifically warns the Plaintiffs, however, that any further failure to respond to any of the Defendants' reasonable discovery requests, or to comply timely and fully with this Court's Orders, the Local Rules, or the Rules of Civil Procedure <u>will</u> result in the imposition of further sanctions. **Sanctions can include the Plaintiffs and/or their counsel being required to pay the Defendants' costs incurred in this litigation, including reasonable attorney's fees, and <u>may also include dismissal of their Complaint with prejudice</u>**.

## III.  ORDER

**NOW THEREFORE, IT IS ORDERED:**

1.  Defendant Vicki Ingledue, M.D.'s  "Motion to Dismiss" (document #38) is **DENIED** <u>at this time</u>, that is, without prejudice to renew it should the Plaintiffs continue this above described nonfeasance or otherwise violate the terms of this Memorandum and Order.

2. Defendant Ingledue's  "First Motion for Sanctions" (document #36) is **GRANTED IN PART** and **DENIED IN PART**, that is,

a. <u>On or before January 19, 2006, the Plaintiffs shall serve complete verified supplemental responses to the Defendant's  "First Set of Interrogatories ... [and] Request for Production of Documents ... to the Plaintiff, Kenneth Barton," "First Set of Interrogatories ... [and] Request for Production of Documents ... to the Plaintiff, Sharon Barton," and  "Second Set of Interrogatories of Defendant, Vicki Ingledue, M.D., to the Plaintiffs, Kenneth Barton and Sharon Barton, Pursuant to Rule 9(j).</u>"  **The Plaintiffs are advised that no further extensions will be granted for serving the subject responses, and responses served after January 19, 2006 will not be considered by the Court.**

b.   Defendant's motion for attorneys' fees and costs contained in her First Motion For Sanctions is **GRANTED**.  Defense counsel shall promptly serve on counsel for the Plaintiffs, Thomas F. Sacchetta,  an Affidavit setting forth the attorneys' fees, including a breakdown of the time and the hourly rate(s) that were (or would be) billed to the Defendant, as well as other costs that the Defendant has incurred, concerning the Defendant's Motions to Compel (documents ## 28 and 35), "First  Motion for Sanctions" (document #36), and second "Motion to Dismiss" (document #38), and <u>Mr. Sacchetta shall promptly serve copies of both the Affidavit and this Memorandum and</u>

11

<u>Order on the Plaintiffs</u>.

c. <u>Within 45 days of Mr. Sacchetta's receipt of said Affidavit, the Plaintiffs shall remit directly to Defendant's counsel the full amount of the Defendant's attorneys's fees and costs as stated in the Affidavit.</u>

3. <u>The Defendant's deadline for serving her expert report is extended until February 15, 2006; the discovery and dispositive motions deadlines are extended to March 31 and April 30, 2006, respectively</u>.

4. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED**.

**Signed: December 7, 2005**

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge