# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:04CV171-H

| | |
|---|---|
| KENNETH BARTON and SHARON BARTON, ) ) ) Plaintiffs, ) ) vs. ) ) VICKI INGLEDUE, M.D., MARK ) SCOTT, P.A., and ASHE MEMORIAL ) HOSPITAL, ) ) Defendants. ) ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on "Defendants Mark Scott, P.A. and Ashe Memorial Hospital's [Second] Motion for Summary Judgment" (document #45), "Motion for Sanctions ..." (document #46) and "Brief in Support ..." (document #47), all filed January 30, 2006; and the Plaintiffs' "Response ... " (document #48) filed February 27, 2006. The moving Defendants have not filed a reply brief in support of their Motions and the time for filing a reply has expired.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these Motions are now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> "Defendants Mark Scott, P.A. and Ashe Memorial Hospital's Motion for Summary Judgment" and "Motion for Sanctions," as discussed below.

# I. FACTUAL AND PROCEDURAL BACKGROUND

This is a medical malpractice action filed in federal court pursuant to diversity subject matter jurisdiction. The Defendant Ashe Memorial Hospital ("the Hospital") is organized under the laws of North Carolina and located in Jefferson, Ashe County, North Carolina. Defendant Mark Scott, a North Carolina citizen, is a Physician's Assistant ("P.A.") employed by the Hospital. Defendant Vicki Ingledue, M.D., also a North Carolina citizen, is a board-certified family practice physician, who at the times relevant to the Complaint, practiced at the Hospital and served, on a rotational basis with the Hospital's other physicians, as the "on call" doctor for the Hospital's emergency room.

The Plaintiffs, Kenneth Barton and his wife, Sharon Barton, are citizens of Catasauqua, Pennsylvania. Sometime on June 24, 2001, the Plaintiffs, who apparently were in the area on vacation, went to the Hospital's emergency room for treatment of a cut on the back of Mr. Barton's lower leg that he had sustained in a fall while hiking. Although the parties have not submitted Mr. Barton's medical records, based on the narration of Mr. Scott's treatment note that is contained in the opinion of Dr. Ronald F. Sing, the Plaintiffs' expert, the wound was "very complex ... [and] involved multiple layers into the fat, fascia, and muscle as well as being grossly contaminated." Exhibit F to Defendant Ingledue's "Motion to Dismiss" (document #20).[1]

---

[1] Previously, Defendant Ingledue filed a Motion to Dismiss and these moving Defendants filed a Motion for Summary Judgment which raised the same issues, that is, the Plaintiffs' alleged failure to file their lawsuit within the applicable statute of limitations period and to certify that "the medical care of the Defendants ha[d] been reviewed by a person reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care," as required by N.C. R. Civ. P. 9(j). On June 14 and July 14, 2005, respectively, and because the Complaint was timely filed and did contain the required expert certification, the undersigned denied those Motions. See "Memorandum and Order[s]" (documents ## 24 and 29).

It is undisputed that at the time Mr. Barton went to the Hospital, Dr. Ingledue was the on call doctor for the emergency room, although she was at her home during the time that Mr. Barton received treatment, and that Mr. Scott, who was under her supervision, treated Mr. Barton.

According to Dr. Sing's recitation of the care provided, which the Defendants have not disputed at this point of the proceedings, Mr. Scott administered a local anesthetic, cleaned the wound, that is, he performed a "local syringe irrigation" and "removed multiple foreign bodies," sutured the wound, applied a dressing, and gave the Plaintiff a prescription for Keflex, an antibiotic, with instructions to begin taking the medicine "if signs of infection ar[o]se." Id.

Sometime later, Dr. Ingledue reviewed and "signed off" on Mr. Scott's treatment note. In her affidavit, Dr. Ingledue stated that she signed the treatment note "pursuant to the [H]ospital procedure for post-visit physician oversight of medical care provided by physician's assistants." Exhibit A to Defendant Ingledue's "Motion to Dismiss" (document #20).

The Plaintiffs allege that during the next week and as a proximate result of the Defendants' failure to provide proper medical care, Mr. Barton developed a "tremendous infection, leading to the necessity of skin grafts and substantial loss of muscle in the area of the wound from a necrotic process." Id. The Plaintiffs also allege that when Mrs. Barton contacted the Hospital telephonically and described the onset of the infection, Hospital staff instructed her that Mr. Barton would not be seen until he experienced fever exceeding 102 degrees.

The Plaintiffs subsequently returned to their home in Pennsylvania, where Mr. Barton was treated at Leigh County Hospital.

Relevant to the subject Motions, on October 22, 2004, the Plaintiffs filed their Complaint, alleging negligence claims against each of the Defendants, as well as claims against the Hospital

under theories of vicarious liability, agency, and "corporate liability," along with Mrs. Barton's claim for loss of consortium.

On January 3, 2005, the Defendants answered the Complaint, including stating affirmative defenses that Mr. Barton's injuries "may" have resulted from his contributory negligence. See "Answer" of Defendant Hospital and Defendant Scott (document #9) and "Answer" of Defendant Ingledue (document #10).

On January 15, 2005, Dr. Ingledue served "Interrogatories to the Plaintiff[s] ... Pursuant to Rule 9(j)," that is, preliminary interrogatories concerning Dr. Sing's opinion generally.[2]

In response to Dr. Ingledue's Rule 9(j) Interrogatories, Dr. Sing identified numerous alleged violations of the standard of care, including "a physician extender ... manag[ing] this [type of] wound without physician input"; cleaning the wound only through local irrigation, as opposed to placing the patient under general anesthesia and conducting a manual search for or taking an X-Ray of the wound area in order to locate any additional "foreign bodies" in the wound; immediately closing the wound, as opposed to leaving the wound open for "more irrigations over several days"; failing to install a drain in the wound once it had been closed; failure to give Mr. Barton a tetanus booster shot; failure to instruct Mr. Barton to begin taking antibiotics immediately; placing the burden of identifying infection on the patient, particularly in a wound on the back of the leg that is difficult to see; and failure to instruct Mr. Barton to follow up with a doctor within 48-72 hours of discharge from the emergency room. See Exhibit F to Defendant Ingledue's "Motion to Dismiss" (document #20).

---

[2] There is no indication in the record that Mr. Scott or the Hospital served any Rule 9(j) Interrogatories.

4

On September 27, 2005, the Defendants deposed each of the Plaintiffs, during which they denied that Mr. Barton delayed in seeking medical care or failed to comply with the Defendants' or any other medical providers' instructions.

On November 23, 2005, and after being twice <u>ordered</u> to do so, the Plaintiffs served their responses to Dr. Ingledue's written discovery requests, that is, interrogatories, requests to produce documents, and requests for admissions, and also served a courtesy copy of those responses (hereafter, "the Ingledue responses") on counsel for the Hospital and Mr. Scott. Concerning the Plaintiffs' initial failure to respond to Dr. Ingledue's discovery requests, please <u>see</u> "Orders[s]" (documents ## 34 and 37) <u>and</u> "Memorandum and Order" (document #43) (in the aggregate, <u>ordering</u> the Plaintiffs to serve complete responses to Dr. Ingledue's discovery requests and to pay related attorneys' fees and other costs).

Five days later, the Hospital and Mr. Scott served their "Request for Admissions" and "Request for Production of Documents," the first written discovery requests they had served in this action and that were patterned after Dr. Ingledue's requests. The moving Defendants' Request for Admissions asked Mr. Barton to admit or deny, among other things, whether he "failed to timely care for his wound and failed to seek timely medical attention," a request virtually identical to one contained in Dr. Ingledue's written discovery that Mr. Barton previously had denied.

On December 8, 2005, the Plaintiffs' counsel wrote the Hospital's and Mr. Scott's counsel stating that unless the Defendants objected, the Plaintiffs intended to adopt the Ingledue responses as their responses to the moving Defendants' discovery requests as well. The Defendants, who as noted above did not file a reply brief in support of the subject Motions, concede that their defense counsel never responded to this letter. Moreover, there is nothing in the record showing that the

5

moving Defendants ever informed the Plaintiffs that their responses were untimely or deficient, other than by filing the subject Motions.

Hearing nothing from the Defendants, and out of an abundance of precaution, the Plaintiffs served written responses to the moving Defendants' Request for Admissions on January 10, 2006, eight days after they would have been due absent an agreement between the parties or a formal extension by the Court.

On January 30, 2006, the Hospital and Mr. Scott filed their Motion for Summary Judgment and Motion for Sanctions, asking the Court to deem their Request for Admissions to be admitted, and based on the alleged admission that Mr. Barton failed to seek timely medical care, dismiss the Plaintiffs' claims under the doctrine of contributory negligence,[3] or otherwise to dismiss the Complaint as a sanction for the Plaintiffs' alleged failure to serve responses to these Defendants' discovery requests.

The Defendants' Motions have been briefed as set forth above and are now ripe for disposition.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See also Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir. 1979). Once the movant has met its

---

[3]The Defendants have not briefed the contributory negligence issue, but assume in their brief that if the Request for Admissions are treated as admitted, dismissal under that doctrine would otherwise be proper.

burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

Rule 36(a) of the Federal Rules of Civil Procedure states in relevant part that "the matter [in the subject request for admission] is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, ... the party to whom the request is directed serves upon the party requesting the admission a written answer."  The Court has discretion, however, to permit an offending party to file an untimely response to a request for admission, that is, "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal [of the admission] will prejudice that party in maintaining the action or defense on the merits." Fed. R. Civ. P. 36(b). See, e.g., Kress v. Food Employers Labor Relations Ass'n, 285 F.Supp.2d 678, 681 (D. Md. 2003) (court has "considerable discretion over the withdrawal of

admissions once they have been made"); and United States v. Turk, 139 F.R.D. 615, 618 (D. Md. 1991).

Similarly, whether to impose other discovery sanctions is within the district court's discretion, limited by the Fourth Circuit Court of Appeals' instruction that prior to imposing sanctions of a dispositive nature (such as dismissing a complaint), the court should both establish a history of dilatory action and warn the offending party of what may follow. See, e.g., Hathcock v. Navistar Int'l Transp. Corp., 55 F.3d 36, 40 (4th Cir. 1995); Choice Hotels Int'l v. Goodwin & Boone, 11 F.3d 469, 473 (4th Cir. 1993); and Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir. 1987).

Applying these legal principles, the Defendants' Motion for Summary Judgment and Motion for Sanctions will be denied. Unlike their earlier failure to respond to Dr. Ingledue's discovery requests, the Plaintiffs' responses to these Defendants' Request for Admissions and Request for Production of Documents can hardly be characterized as dilatory. Indeed, the Plaintiffs served the Ingledue responses on the Hospital and Mr. Scott before those Defendants even commenced written discovery. Upon receiving the moving Defendants' discovery requests, which track Dr. Ingledue's discovery, Plaintiffs' counsel promptly wrote defense counsel and formally adopted the previously-served Ingledue responses, but expressed the Plaintiffs' willingness to serve additional responses if the Defendants objected to the Plaintiffs' proposed course of action. Rather than object or give the Plaintiffs any other notice that they considered the Ingledue responses insufficient, however, the Hospital and Mr. Scott elected to remain silent and have no other communication with the Plaintiffs until weeks after the response period had expired, when they filed the subject dispositive Motions.

The Defendants have not cited, and the undersigned is unaware of, any authority permitting the dismissal of a complaint as a discovery sanction under these or similar circumstances.

For the same reasons, as well as the fact that the Defendants have known at least since the September 27, 2005 depositions that the Plaintiffs deny being contributorily negligent, the Plaintiffs will not be deemed to have admitted that Mr. Barton failed to seek timely medical care. To the contrary, in light of the Plaintiffs' evident attempt to respond fully and promptly, the Defendants' silence, and the absence of prejudice, the Court will treat the Plaintiffs' January 10, 2006 responses as timely filed.

### III. ORDER

**NOW THEREFORE, IT IS ORDERED:**

1. "Defendants Mark Scott, P.A. and Ashe Memorial Hospital's [Second] Motion for Summary Judgment" (document #45) and "Motion for Sanctions ..." (document #46) are **DENIED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED**.

Signed: March 21, 2006

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge